UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAOUZI JABER,

                Plaintiff,

– against –

CHRISTINA HANLEY,

                Defendant.

**OPINION & ORDER**

24-cv-998 (ER)

RAMOS, D.J.:

    Faouzi Jaber brings this action *pro se*, alleging that during his 2016 extradition from the Czech Republic, former Drug Enforcement Administration Agent Christina Hanley stole several items of his personal property amounting to over $8 million in value. Doc. 29. Hanley now moves to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. Doc. 32. For the reasons set forth below, the motion is GRANTED.

I.    BACKGROUND

    The following facts are drawn from allegations contained in the complaint, Doc. 29, which the Court accepts as true for purposes of the instant motion. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

    **A. Criminal Case Against Jaber**

    Jaber was indicted by a grand jury sitting in the United States District Court for the Southern District of New York on March 26, 2014. *See United States v. Jaber*, No. 13-cr-485 (CM), 2022 WL 35434 (S.D.N.Y. Jan. 4, 2022) (the "Criminal Case"), Doc. 12. He was charged in the six-count indictment with money laundering and conspiring to: kill U.S. officers and employees; acquire and transfer anti-aircraft missiles; provide material support to a foreign terrorist organization; commit money laundering; and import cocaine into the United States. *Id.* Local police officers arrested him in Prague,

Czech Republic, on April 5, 2014, pursuant to the indictment. Doc. 38 at ECF 1. Present during the arrest was then-DEA Agent Christina Hanley. *Id.*

Jaber was extradited to the United States on April 5, 2016. *Id.* During the extradition, Hanley took custody of Jaber's belongings, including his "jewelry, watches, family heirlooms, gold pens, diamonds, legal documents, passports and currency." *Id.* at ECF 6; *see also* Doc. 29 at ECF 9. Hanley gave Jaber a receipt for the items, Doc. 38 at ECF 2, and verbally promised to return the items to him following resolution of the criminal charges against him. Doc. 29 at ECF 13. According to Jaber, Hanley never returned these items, instead converting the property for "her own personal use and possession" in violation of his constitutional right to due process. Doc. 29 at ECF 11.

Jaber ultimately pleaded guilty to one of the charged counts and was sentenced to a 15-year term of imprisonment in February 2018. Criminal Case, Doc. 54.

### B. Prior Litigation over Jaber's Property

Jaber first alleged theft by Hanley in early 2020, as part of a separately-filed complaint against several defendants, including Judge Colleen McMahon, who presided over his criminal case, his defense lawyers, the Government prosecutors, and Agent Hanley. Doc. 29 at ECF 5. In the 2020 action, Jaber sought the return of his property including extradition papers, passports, jewelry, and other items allegedly seized from him when he was extradited. *See Jaber v. Hanley*, No. 20-cv-7347 (LLS), 2020 U.S. Dist. LEXIS 230955, at *11–12 (S.D.N.Y. Dec. 2, 2020). Judge Louis Stanton dismissed his complaint for failure to state a claim. *Id.*

Jaber moved for the return of his property again in 2022; this time in connection with his criminal case, pursuant to Federal Rule of Criminal Procedure 41(g). *See* Criminal Case, Doc. 91. Judge McMahon denied the motion insofar as it pertained to Jaber's passports, which the Government stated it had already returned to his lawyer, and granted the motion insofar as it pertained to any other property still in the Government's

possession. *Id.*, Doc. 93. The Government subsequently returned additional property to Jaber, including documents, bank cards, and a watch. *Id.*, Doc. 96.

Jaber then renewed his Rule 41(g) motion, alleging that DEA agents involved in his extradition still retained possession over other items, including jewelry. *Id.*, Doc. 95. Judge McMahon denied the renewed motion, based on substantial evidence from the Government establishing that it had returned all of Jaber's property in its possession. *Id.*, Doc. 98.

### C. Jaber's Present Complaint

Jaber commenced this action against Hanley on February 7, 2024, again seeking return of his passports and damages for the value of the other property that Hanley allegedly stole from him during his extradition—including "legal papers, jewelry, watches, bracelets and rings, [and] monetary currency," worth over $8 million in total. Docs. 1, 29 at ECF 12. He submitted a request to proceed *in forma pauperis* on March 12, 2024, which the Court granted. Docs. 4, 5. He brings the claims pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Docs. 1, 29. The Court also construed the complaint as asserting a claim against Hanley pursuant to Federal Rule of Criminal Procedure 41(g). Doc. 9. The complaint was amended on January 7, 2025. Doc. 29. The Government moved to dismiss on February 24, 2025. Doc. 32. Jaber submitted a letter in response on May 28. Doc. 42.

## II. LEGAL STANDARD

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its

3

face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The Court construes pleadings and briefs submitted by *pro se* litigants liberally, interpreting such submissions as "rais[ing] the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

### III. DISCUSSION

#### A. Jaber's *Bivens* Claim

In *Bivens*, the Supreme Court recognized an implied damages action "to compensate persons injured by federal officers who violated the [Fourth Amendment's] prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017). However, the Court has since become increasingly cautious before finding new implied causes of action, clarifying that "expanding the *Bivens* remedy is now a

4

'disfavored' judicial activity," *id.* at 121 (quoting *Iqbal*, 556 U.S. at 675).  The Supreme Court has therefore set forth a two-step inquiry for determining whether a *Bivens* remedy is available.

First, courts must consider "whether a case presents a new *Bivens* context."  *Id.* at 139.  The Court has previously recognized a *Bivens* remedy in only three situations:  (1) in *Bivens* itself, the Court recognized a Fourth Amendment claim "against FBI agents for handcuffing a man in his own home without a warrant," *id.* at 140; (2) in *Davis v. Passman*, 442 U.S. 228 (1979), the Court recognized a Fifth Amendment challenge "against a Congressman for firing his female secretary," *Abbasi*, 582 U.S. at 140; and (3) in *Carlson v. Green*, 446 U.S. 14 (1980), the Court recognized an Eighth Amendment claim "against prison officials for failure to treat an inmate's asthma," *Abbasi*, 582 U.S. at 139.  If the case at hand differs "in a meaningful way from previous *Bivens* cases . . . then the context is new."  *Id.* at 147.  A non-exhaustive list of factors to consider includes:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Id.* at 122.  If the case presents a new *Bivens* context, the Court must next consider whether there are "special factors counselling hesitation."  *Id.* at 121 (internal quotation marks and citation omitted).  This inquiry concentrates on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 136.

This Court has previously held that a "Fifth Amendment due process claim for the deprivation of personal property presents a new *Bivens* context" and that "the availability of alternative remedies . . . precludes any extension of *Bivens* to encompass such claims."

5

*Nasiruddin v. Pliler*, No. 21-cv-7044 (CS), 2024 WL 2262664, at *10 (S.D.N.Y. May 17, 2024); *see also Ochoa v. Bratton*, No. 16-cv-2852 (JGK), 2017 WL 5900552, at *7 (S.D.N.Y. Nov. 28, 2017); *Adekoya v. Federal Bureau of Prisons*, 375 F. App'x 119, 121 (2d Cir. 2010).

Here, an applicable alternative remedy is provided by 31 U.S.C. § 3724, which states that "the Attorney General may settle, for not more than $50,000 in any one case, a claim for . . . damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer . . . acting within the scope of employment." While Jaber's claimed damages exceed $50,000, the fact that he "might not be able to recover . . . the full amount which he might receive in a *Bivens*-type action is not . . . determinative of the adequacy of the [administrative] remed[y]." *Stuto v. Fleishman*, 164 F.3d 820 (2d Cir. 1999) (quoting *Hudson v. Palmer*, 468 U.S. 517, 518 (1984) (O'CONNOR, J., concurring)).

Accordingly, Jaber's *Bivens* claim fails, both for the "new context" application it seeks as well as for his failure to pursue the administrative remedy available to him. *Abbasi*, 582 U.S. at 139; *see Adekoya*, 375 F. App'x at 121; *see also Ochoa*, 2017 WL 5900552, at *7; *Lewis v. Weiss*, No. 12-cv-7242 (ALC), 2016 WL 1718251, at *7 (S.D.N.Y. Apr. 27, 2016).

### B. Jaber's Rule 41(g) Motion

Federal Rule of Criminal Procedure 41(g) provides that a person "aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." When the criminal action giving rise to a plaintiff's Rule 41(g) motion has ended, the court treats the motion "as [a] standalone civil action[] in equity." *Allen v. Grist Mill Capital LLC*, 88 F.4th 383, 394 (2d Cir. 2023).

The Government contends that Jaber's Rule 41(g) motion is barred by *res judicata*, based on Judge McMahon's 2023 ruling denying his renewed Rule 41(g) motion. Doc. 33 at ECF 10; *see* Criminal Case, Doc. 98. The doctrine of *res judicata*

precludes "the subsequent litigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined." *Balderman v. U.S. Veterans Administration*, 870 F.2d 57, 62 (2d Cir. 1989); *see also Azzara v. United States*, No. 19-cv-8751 (KMK), 2020 WL 13553829, at *3–4 (S.D.N.Y. Feb. 14, 2020) (finding *res judicata* to preclude a renewed Rule 41(g) motion when plaintiff raised same claim during pendency of his sentencing appeal).

In considering whether *res judicata* bars a litigant's claim or motion, courts apply a three-prong test, which asks: (1) whether "the previous action involved an adjudication on the merits"; (2) whether "the previous action involved the [same adverse parties] or those in privity with them"; and (3) whether "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. NY City Department of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000).

The Court finds that Jaber's Rule 41(g) motion is barred by *res judicata*. As to the first prong—despite Jaber's assertions—the previous action did involve an adjudication on the merits by Judge McMahon. *See* Criminal Case, Doc. 98. Judge McMahon denied Jaber's renewed Rule 41(g) motion, because the Government had provided evidence demonstrating it had already returned the passports to his former counsel, as Jaber himself acknowledged, *id.*, Doc. 95, as well as evidence demonstrating that it had returned all other property belonging to Jaber in its possession. *Id.*, Doc. 98.

As to the second prong, the Court finds that the prior action involved the same adverse parties or their privies as is required for *res judicata* to apply. There is "no bright line rule as to whether privity exists for *res judicata* purposes." *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) (quoting *Amalgamated Sugar Co. v. NL Industries, Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)). "[A]ccordingly, parties encompassed under the term privity include . . . those whose interests are represented by a party to the action[.]" *Harding v. Paramount Pictures*, No. 12-cv-66 (DAB) (HBP), 2013 WL 174401, at *7 (S.D.N.Y. Jan. 16, 2013) (internal quotations omitted); *see also Chase*

7

*Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) (finding that "[*r*]*es judicata* may bar non-parties to earlier litigation not only when there is a formal arrangement for representation in, or actual control of, the earlier action but also when the interests involved in the prior litigation are virtually identical to those in later litigation"). The Court is satisfied that, in the present action, Hanley's interest is "virtually identical" to the interest of the United States in the criminal case against Jaber for the purpose of opposing a Rule 41(g) motion, because the basis for the Rule 41(g) motion in both cases was Hanley's alleged theft of Jaber's property during his extradition. *Chase Manhattan Bank*, 56 F.3d at 345; *compare* Doc. 29 *with* Criminal Case, Doc. 95.

Finally, as to the third prong, Jaber's claims were indeed raised in the prior action. All the items that Jaber seeks return of or damages on in the present action are described in the Rule 41(g) motion brought pursuant to the criminal case—meaning that the two motions are substantially identical. *Compare* Doc. 29 *with* Criminal Case, Doc. 95.

Given that all three prongs of the test are satisfied, Jaber's Rule 41(g) motion is barred pursuant to the doctrine of *res judicata.*

## IV.   CONCLUSION

For the foregoing reasons, Hanley's motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 32, and to close the case.

In addition, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal of this Order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:   June 11, 2025
         New York, New York

                                              _____
                                              EDGARDO RAMOS, U.S.D.J.